G. A. MOSS, Respondent, v. SAMUEL L. HUNTER
et al., Appellants.

St. Louis Court of Appeals, March 2, 1915.

1. **APPELLATE PRACTICE: Trial Practice: Refusal to Grant Continuance: Prerequisites to Review.** The refusal to grant a continuance, on the ground of surprise, because of an amendment to the petition on the day of the trial, is not reviewable, on appeal, where defendant did not file an affidavit of surprise nor make a showing that he was prejudiced by the amendment.

2. **SALES: Sale of Standing Timber: Contract Construed.** Under a contract for the sale of timber standing on a tract of land, which obligated the buyer to remove all of the timber of specified sizes, and which provided that, when the timber had been removed from eighty acres or more of the land, the buyer might notify the seller of such removal and after it had been found that the timber had been removed according to contract, the buyer would be released from all obligations under the contract as to such tract, and which further provided that the seller reserved the right to "dictate from portions of the land the timber shall be removed," the seller had a right to direct the order in which the timber should be taken from the various parts of the land, and the buyer was obligated to take the timber clean as he went.

3. **———: ———: Breach of Contract: Sufficiency of Evidence.** In an action by a buyer for the breach of a contract for the sale of standing timber, defended on the ground that the buyer was not removing the timber from the different parts of the land in the order specified by the seller, as required by the contract, evidence that the seller, when informed of the buyer's arrangement to commence cutting at a particular point, acquiesced therein, and that, subsequently, when the seller complained of the manner in which the timber was being removed, the buyer announced that he was ready to cut according to the seller's directions *held* sufficient to warrant a finding that the seller was not justified in refusing to permit the buyer to continue under the contract, and hence *held* sufficient to support a verdict for plaintiff.

4. **APPELLATE PRACTICE: Conclusiveness of Verdict.** It is the province of the trial court alone to set aside a verdict as being against the weight of the evidence.

5. **INSTRUCTIONS: Submission of Erroneous Theory.** In an action for the breach of a contract, the giving of an instruction

which permits a recovery under an erroneous construction of the contract, constitutes reversible error.

6. **SALES: Sale of Standing Timber: Breach of Contract: Measure of Damages.** In an action by a buyer for the breach of a contract for the sale of standing timber by the seller, the damages should have been measured with reference to the reasonable market value of the timber, and it was error to allow the damages to be measured with reference to a special contract price that the buyer would have received for the timber.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*Murray Phillips* and *Thomas Gallivan* for appellants.

(1) The court erred in not granting a continuance to the defendants on the grounds of surprise when the plaintiff was permitted to amend his petition in a material manner, changing the number of feet of timber alleged to be on the land from one million feet to one million five hundred thousand feet. (2) The court erred at the close of plaintiff's evidence in not giving instruction number 1, in the form of a demurrer to the evidence. (3) The court erred in not giving instruction number 2 on the part of the defendants, in the form of a demurrer to the evidence at the close of the case. (4) The court erred in giving instructions numbers 2 and 4 on the part of the plaintiff.

*Ward & Collins* for respondent.

(1) Appellants contend that the court erred in not granting a continuance to defendants on the ground of surprise when plaintiff amended his petition. Plaintiff had the right to amend his petition, and the only question was on the terms on which to amend. Sec. 1848, R. S. 1909; Peterson v. Met. Street Ry., 211 Mo.

515. An amendment at the time and in the manner was discretionary with the trial court. Evans v. Fulton, 134 Mo. 653; Joyce v. Growney, 154 Mo. 263; Ensworth v. Barton, 67 Mo. 622. Defendants were not entitled to a continuance as of course, but only by showing to the satisfaction of the trial court by affidavit or otherwise that they could not be ready for trial in consequence of the amendment. Sec. 1961, R. S. 1909; Peterson v. Met. Street Ry., 211 Mo. 517; Calhoun v. Crawford, 50 Mo. 458; Keltonbaugh v. Railroad, 34 Mo. App. 147; Pifer v. Stanley, 57 Mo. App. 516; Keaton v. Railroad, 116 Mo. App. 281. (2) The instruction on the measure of damages is correct. It is a well-settled rule of law that where parties sustain a loss by reason of a breach of contract he shall, as far as money can do it, be placed in as good situation by recovering damages as if the contract had been performed. Chalice v. Witt, 81 Mo. App. 91; Rhodes v. L. & L. Co., 105 Mo. App. 279; Hedden v. Schneblin, 126 Mo. App. 478; Nat'l Warehouse Co. v. Toomey, 144 Mo. App. 516, 521; Norman v. Vanderburg, 157 Mo. App. 493; Green v. Cole, 127 Mo. 587.

ALLEN, J.—This is an action for damages for the alleged breach by defendants of a contract for the sale by them to plaintiff of certain timber. There was a verdict and judgment below for plaintiff, from which the defendants prosecute this appeal.

The contract, entered into on November 24, 1908, purported to convey to plaintiff, upon the terms and conditions named, all of the merchantable cottonwood and sycamore timber standing on a certain tract of land in New Madrid county, Missouri. By the terms of the contract plaintiff agreed to remove all of such cottonwood timber "twelve inches and up in diameter and the sycamore fourteen inches and up in diameter at the small end, to place the same on logs on the

river bank or float roads at his own expense," during the years 1909 and 1910.

A further provision of the contract is as follows: "That at any time when said timber has been removed from eighty acres or more of said land the party of the second part [plaintiff] may notify parties of the first part [defendants], or their agent as designated by them, of the removal of said timber, after same has been viewed by said parties and found that the timber has been removed according to contract, parties of the first part releases party of the second part from all obligations as set out in the contract as to such tract or tracts."

The contract provided that plaintiff would pay defendants six dollars per thousand feet for the cottonwood timber and $1.50 per thousand feet for the sycamore, "scaled on the river bank or float roads."

The final paragraph of the contract is as follows: "Parties of the first part reserve the right to dictate from portions of the land the timber shall be removed."

The petition pleads the contract, averring that there was on the land a million feet of cottonwood and sycamore which was thereby sold to plaintiff, and that plaintiff's profit thereon would reasonably have been five dollars per thousand feet, a total of five thousand dollars. It is averred that plaintiff was at all times ready, willing and able to perform the contract on his part, but that defendants breached the same by refusing to permit plaintiff to cut and remove the timber, to plaintiff's damage in the sum last above mentioned.

The answer, among other things, which need not be noticed, sets up that by mutual mistake of the parties and of the scrivener who wrote the contract, the word "first" was omitted from before the word "removed" in the final clause of the contract, above quoted, and that said clause was intended by both par-

ties to be as follows: "Parties of the first part reserve the right to dictate from the portion of the land the timber shall be first removed." And defendants ask that the contract be so modified and construed. It is averred that defendants directed plaintiff to begin cutting and removing the timber, "taking the same clean as he went," from the east, west or north side of the tract of land, in order that the value of that remaining might not be decreased, but that, contrary to such directions and in violation of the terms of the contract, plaintiff began to cut and remove timber from the "south side and middle of said tract and to remove only the cottonwood, the same being the most valuable timber and the nearest haul." The answer admits that defendants stopped plaintiff from cutting and removing the timber, but avers that they did so for the reason that plaintiff was violating the terms of the agreement as aforesaid; that defendants nevertheless offered to permit plaintiff to remove the timber in such manner as he saw fit if plaintiff would execute a bond conditioned that he would remove all of such timber, which plaintiff refused to do.

The reply controverts the new matter pleaded in the answer, and charges that defendants had no right to require plaintiff to "take the timber clean," or to demand a bond of plaintiff.

It appears that the tract of land lies in a bend of the Mississippi river, the river extending around at least a large portion of it, and that there was an old river bed running through it which had been abandoned by a change in the course of the stream. Plaintiff testified that, after entering into this contract, he made a contract with one Aldridge to cut and handle timber from the "north side of the old river." It appears that this was in December, 1908. He says that about ten days after the execution of the contract sued upon he told defendants that he was going to commence on the north side, and that one of defend-

ants (apparently meaning defendant Conran) said: "Well, some time we will be down;" that he also went to see defendants and suggested that the land ought to be surveyed, as there was some dispute about the lines, and that he then told them that he had made a contract with Aldridge to commence on the "north side of the old river," and that defendants "didn't protest at all;" that on January 2, defendants Hunter and Conran met plaintiff on the land, and that defendant Conran said to begin "on the lower side first," which was the southwest side; that shortly thereafter these two defendants withdrew behind a shed and held a conference, and upon returning a few minutes later informed plaintiff that they wanted him to begin on the "upper side," or northeast side, near the river. Plaintiff states that in each instance he told defendants of certain difficulties in beginning as they directed, but agreed to do so if they so insisted; that after leaving plaintiff and driving elsewhere in the woods, they returned and told him that they had discovered Aldridge with men cutting timber contrary to their directions, and thereupon notified plaintiff that he would not be permitted to continue further under the contract.

Plaintiff admitted that Aldridge was cutting at the place where he had directed him to begin. He admits that he told one Dunn, defendant's agent, that he would go to see Conran to get directions as to where to begin work, but that before he saw Conran he had already notified Aldridge where to commence cutting. He admits that when defendants Hunter and Conran were in the woods they asked him if some one was not "cutting timber back there." And when he was asked by defendants' counsel if he did not reply that it must be "some one in there cutting wood," he answered: "I didn't know Aldridge had commenced."

On the part of defendants the testimony is very positive that plaintiff was first told to confer with Dunn as defendants' agent, regarding the place at which to commence cutting; that plaintiff and Dunn, however, could not agree, whereupon defendants notified plaintiff that they would come themselves and give directions. Defendant Conran admitted that plaintiff said, upon one occasion, after the execution of the contract, that he was going to begin work at a point about the bed of the old river, but that the witness told him that Dunn would be sent to give directions.

The testimony of defendants Conran and Hunter respecting what took place in the woods at the time above mentioned is to the effect that they told plaintiff that he could commence either on the west side or on the east side of the timber, but that plaintiff declined to do either, interposing objections thereto particularly because he had no market for the sycamore on the east side, and the cutting of the cottonwood on the west side required floating it on the float roads, whereas plaintiff had arranged to sell it on the river bank, and money was to be advanced to him on it there by the purchaser. This is very closely corroborated by the testimony of a disinterested witness who was present. And the testimony in behalf of defendants is to the effect that, when this conversation was had, defendants Conran and Hunter did not withdraw to hold a conference, did not make any change in the directions given plaintiff, and that there was no shed or other such building in the vicinity in question.

It is unnecesary to notice the further details of the evidence. The assignments of error pertain to the refusal of the court to grant a continuance on the ground of surprise, the overruling of defendants' demurrer to the evidence, and the giving of two instructions for plaintiff.

I. It is quite clear that there is no merit in the assignment of error relating to the refusal of the court to grant defendants a continuance. As stated above, the petition, as filed, averred that there was 1,000,000 feet of timber on the land. On the day of the trial, before the jury was sworn, the court, at plaintiff's request, permitted the petition to be amended to state there was 1,500,000 feet of timber thereon. Defendants' counsel thereupon requested that the cause be continued at plaintiff's cost on the ground of surprise, which request the court denied. There was no affidavit of surprise and no showing that defendants were in any way prejudiced by the amendment, and the matter is not open to review here.

II. As to the ruling upon the demurrer, it may be said that plaintiff's case, as we view it, is exceedingly shaky. There appears to be but little, if any, substantial testimony in the record to support the verdict and judgment. It appears that the court did not pass upon the matter of reforming the contract by inserting the word "first" therein, as defendants prayed, but that the court nevertheless treated the contract as having, in this respect, the meaning contended for by defendants. This we think was correct. The contract is very inartfully drawn, but it is quite clear that defendants thereby reserved the right to direct the order in which the timber should be taken from the various parts of the land. And considering the contract as a whole, in the light of the attendant circumstances, it is equally clear that plaintiff was required to take the timber clean as he went. This is shown by the final clause of the contract, when taken together with the earlier clause therein providing that, when the timber had been removed from eighty acres or more, plaintiff might notify defendants, and if it was found that it had been removed therefrom according to the contract, then plaintiff would be re-

leased from all obligations as to such tract or tracts. Indeed, the last clause of the contract would mean virtually nothing under any other construction; the evident intent being to prevent the removal of the most desirable portions of the timber, at perhaps various places on the land, thereby depreciating the value of the timber tract as a whole.

On the whole the evidence greatly preponderates in favor of the defendants on the vital issue in the case. In the face of this contract it is conceded that before plaintiff saw defendant Conran, whom he admits he was to see in regard to the place at which to begin work, he made a contract with Aldridge to commence at a certain place. And plaintiff's own testimony suggests that he was concealing from defendants Conran and Hunter the fact that Aldridge was at work in the woods. From an instruction given it appears that one theory at least under which the trial court allowed the case to go to the jury, was that the jury might find that defendants had failed to give timely directions as to where to begin, by reason whereof plaintiff was justified in making the contract with Aldridge and commencing as he did. It appears to be rather upon the theory that defendants acquiesced in the arrangement which plaintiff had made to begin work, after learning of it, that plaintiff's case may be sustained, if at all. Plaintiff concedes that his contract with Aldridge was made before he saw defendant Conran to get directions. However, plaintiff's testimony is that when he did see Conran he told the latter that he had made this contract to have the work begun north of the old river, and that said defendant did not demur thereto; though Conran's testimony puts quite a different phase upon this. Conran appears to have been handling the matter for defendants, and as there is this testimony of plaintiff, and that to the effect that no further direction was given him until some time later, when defendants

Conran and Hunter came upon the property, and that plaintiff then agreed to thereafter abide by defendants' directions, but that defendants ordered him to quit because of finding Aldridge at work at a place unsatisfactory to them, it would seem that there is not a total lack of evidence, of a sufficiently substantial character, to support a judgment in plaintiff's favor; it being the province of the trial court alone to set aside a verdict as being against the weight of the evidence.

It appears that there is some evidence, as above indicated, from which the triers of the fact might find that defendants were not justified in stopping plaintiff, and refusing to permit him to continue further under the contract, upon finding Aldridge cutting timber at the place where he was working in the woods —on the ground that defendants, as plaintiff asserts, had previously acquiesced in the arrangement made by him to begin at such place—if the jury should further believe plaintiff's version of the conversation in the woods and that plaintiff was ready to follow defendants' directions in the future. In this view, we conceive it our duty, as an appellate court, not to reverse the judgment outright.

III. It is clear, however, that the judgment must be reversed and the cause remanded, for errors in instructions, particularly in instruction number four given for plaintiff. This instruction, among other things, tells the jury that "under the contract read in evidence and upon which this case is based, plaintiff was not required to take the timber clean as he went, and defendants had no right under said contract to so dictate or direct plaintiff." Plaintiff testified that defendants' final instructions, when in the woods, were to begin near the river and "clean off" the sycamore first, this being the only timber on this part of the land. Plaintiff's contention was that he was not re-

quired to take the timber clean, while defendants contended that such was the contract. As we have said above, there can be no doubt whatsoever, we think, as to the meaning of the contract in this respect. It appears quite clear that plaintiff was required to follow defendants' directions as to the order in which plaintiff should remove from the various portions of the land all of the cottonwood and sycamore timber, of the sizes mentioned in the contract, taking the land clean as he went. Under this instruction the jury may well have found that defendants exceeded their rights under the contract in this respect. The instruction takes the very life out of the said reservation in the contract and out of other instructions given.

The instruction on the measure of damages is greatly complained of, and we think that error inheres in it. We shall not prolong the opinion to discuss it at length, as error may be eliminated from it upon another trial. The instruction tells the jury, in substance, that in estimating plaintiff's damages to take the contract price of the timber and to this add the total cost of cutting, removing and marketing the same, as shown by the evidence; and to deduct this total from the amount which the jury find that "plaintiff would have received for said timber." It appears that plaintiff had sold the cottonwood timber at twelve dollars per thousand feet. There was some evidence that this was the market value thereof, but ample evidence that the market value was less. Plaintiff, in any event, is not entitled to have his damages, if any, measured by utilizing this special contract price, but with reference to the reasonable market value. The instruction is otherwise assailed, but this and other questions raised need not be touched upon.

The judgment is reversed, and the cause remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.